THE COMMISSIONERS OF UNION DRAINAGE DISTRICT No. 1,
    Appellants, *vs.* G. W. SMITH *et al.* Appellees.

*Opinion filed February 20, 1908—Rehearing denied April 16, 1908.*

1. DRAINAGE—*land owners may object to competency of commissioners—waiver.* Upon application to confirm a special assessment sought to be levied by a drainage district the land owners may object to the competency of the persons who spread the assessment; but such objection, when based upon the ground that the commissioners own land in the district, is waived if not made before the judgment is confirmed.

2. SAME—*land owner is entitled to have an impartial tribunal spread assessment.* A land owner in a drainage district organized under the Levee act, while he is not entitled to have a trial by jury upon the question of the assessment of benefits, yet he is entitled to have such assessment made by an impartial tribunal under section 2 of article 2 of the constitution, which prohibits the taking of property without due process of law.

3. CONSTITUTIONAL LAW—*due process of law requires an impartial tribunal for adjudication of rights.* Due process of law does not mean a proceeding pursuant to any statute the legislature may enact, regardless of its validity, but means the due course of legal proceedings according to those rules and forms which have been established for the protection of private rights, one of the foremost of which is an impartial tribunal for the adjudication of such rights.

4. SAME—*sections 16 and 37 of Levee act, in so far as they permit an interested party to assess benefits, are invalid.* Sections 16 and 37 of the Levee act, in so far as they appear to confer authority upon the court to direct a commissioner who has a property interest in the lands to be assessed to act with the other commissioners in assessing benefits upon the lands, are unconstitutional.

FARMER, J., dissenting.

APPEAL from the County Court of Kane county; the
Hon. D. B. SHERWOOD, Judge, presiding.

This is an appeal by the commissioners of Union Drainage District No. 1, Kane and Kendall counties, from the judgment of the county court of Kane county refusing confirmation of an assessment made by said commissioners

233—27

against the lands of appellees' in said district. The drainage district was organized in 1890 under the provisions of the so-called "Levee act."

On November 7, 1905, appellants filed their petition in said court setting out in substance that the drainage ditch theretofore constructed in said district, from its intersection with the Elgin, Joliet and Eastern railway to its outlet, was never constructed large, deep or straight enough to carry off the water of said district, by reason whereof a large portion of the lands in said district had never received adequate drainage and the owners of said lands had suffered much loss and damage because of the overflow; that in order to furnish proper drainage for all of the land in said district it would be necessary to make the ditch a uniform width of fourteen feet on the bottom, from said railway tracks south and west a distance of thirty-one hundred feet, and thence to the mouth of the drainage ditch a uniform width on the bottom of twenty feet; that none of the lands in said district would be damaged by said proposed work and that the benefits accruing to said lands would many times exceed the cost of said repairs, improvements and changes; that the cost of the work would be $8000. The petition prayed that the commissioners be ordered to spread, levy and collect an assessment of $8000 against the lands in said district, and that they be ordered to proceed to construct the proposed drainage ditch and to make the repairs, improvements and changes suggested.

On May 11, 1906, upon a hearing on the petition an order was entered finding the averments of the petition to be true and directing the said commissioners to spread an assessment of $8000 upon all the lands in said district for the purpose of constructing the proposed ditch and of making the repairs thereto, and providing that in case it was necessary to take additional land that the commissioners obtain title to the same by eminent domain proceedings, and that they proceed forthwith to enlarge and improve said ditch in

accordance with the plans and specifications submitted to the court.

But two of the commissioners acted. They filed the assessment roll on September 7, 1906, and reported that they had viewed the proposed line of work and the lands to be benefited thereby to ascertain the amount of benefits which would accrue to each tract of land affected, and that they had assessed each tract of land within the boundaries of said district its proportionate share of the entire cost of said proposed work and of the benefits, and that in making the said assessment no tract had been assessed for benefits in a greater amount than its proportionate share of the estimated cost of the work and expenses of the proceedings nor in a greater amount than it would be benefited by the proposed work; that they found that none of the lands so assessed would be in anywise damaged by said proposed improvement.

To the application of the commissioners for the confirmation of the assessment roll numerous objections were filed by appellees. On November 19, 1906, the court entered an order confirming the assessment of $8000 as to all tracts and parcels of land as to which no objections had been filed, and on November 12, 1907, a further hearing was had. The court determined that on the question of damages to the land not taken objectors had the right to a trial by jury, and it was ordered that the clerk of the court issue a special venire for a jury of twelve men, returnable on the 18th of November, 1907. When the matter came on for hearing on the last mentioned date appellants challenged the array of jurors on the ground that the court had no right to empanel a jury in the proceeding. The court sustained the contention of appellants and set aside the order theretofore made calling a jury, and thereupon entered an order sustaining the objections of appellees to the confirmation of the assessment roll in so far as it affected their lands. It is contended by appellants that the court erred in sustain-

ing the objections of appellees and in refusing to confirm the assessment roll.

A. H. SWITZER, and MURPHY & ALSCHULER, for appellants:

This assessment roll is *prima facie* evidence that each piece of land assessed is benefited to the amount of its assessment, and it is the duty of the court to enter a judgment on this assessment roll unless the objectors both allege. and prove some legal reason why the land should not be assessed. *Briggs* v. *Drainage District,* 140 Ill. 53; *Lovell* v. *Drainage District,* 159 id. 188; *Drainage District* v. *Harroun,* 222 id. 489; *Trigger* v. *Drainage District,* 193 id. 230.

It is incumbent upon the objectors to show, both by their allegations and proof, that their lands are damaged by the improvement in excess of benefits. *Hull* v. *Drainage District,* 219 Ill. 454.

In considering the question of damages or benefits, the damages and benefits must be offset against each other. If the damages exceed the benefits the land is damaged; if the benefits exceed the damages the land is benefited. The consideration of a case where the benefits exceed the damages is not an estimate of damages but an ascertainment of benefits. *Joliet* v. *Drainage District,* 222 Ill. 441; *Hull* v. *Drainage District,* 219 id. 454; *Chicago* v. *McCartney,* 216 id. 27.

When the county court approved the petition asking that the drainage ditch theretofore constructed be enlarged, deepened and widened and that an assessment be levied to pay for the same, the court then ordered that the commissioners, and not a jury, spread the assessment. Under the authority of this order the commissioners had the right, in law, to make the assessment in the case at bar. Rev. Stat. chap. 42, par. 68, sec. 37; *Ginn* v. *Drainage District,* 188 Ill. 305; *Briggs* v. *Drainage District,* 140 id. 53; *Trigger* v. *Drainage District,* 193 id. 230; *Stack case,* 217 id. 220.

The prohibition of the constitution to the effect that property cannot be taken or damaged without due process of law does not extend to the consideration of damages in estimating benefits to lands not taken or to the offsetting of damages when benefits exceed the same on lands not taken. Mere questions of damages to land not taken, independent of compensation for lands actually taken, do not warrant or require an ascertainment in eminent domain proceedings by a jury. The party owning the land damaged has his adequate remedy at law therefor. *Parker* v. *Catholic Bishop,* 146 Ill. 158; *Stetson* v. *Railway Co.* 75 id. 74; *Railway Co.* v. *Railway Co.* 156 id. 255.

In the assessment of benefits in a drainage proceeding under the Levee act damages may be set off against benefits. *Ginn* v. *Drainage District,* 188 Ill. 305.

The statute authorizing the commissioners in a drainage proceeding to assess the benefits to the land in the district is constitutional. *Briggs* v. *Drainage District,* 140 Ill. 53; *Trigger* v. *Drainage District,* 193 id. 233; *Hutchins* v. *Drainage District,* 217 id. 561.

RAYMOND & NEWHALL, and SEARS & SMITH, for appellees:

The fact that the petition for the assessment and the assessment roll recite there are no damages is not binding upon the objectors in any way. *Railroad Co.* v. *Drainage District,* 215 Ill. 501.

In a proceeding like this, benefits cannot be set off against damages. *McCaleb* v. *Drainage District,* 190 Ill. 549.

The statute giving commissioners the right to assess damages and benefits, and thus deprive a man of his property either by actual confiscation or by injuring it, is unconstitutional. *Hull* v. *Drainage District,* 219 Ill. 454; *Railroad Co.* v. *Drainage District,* 215 id. 501; *Railway Co.* v. *Drainage District,* 194 id. 312; *Juvinall* v. *Drainage District,* 204 id. 106; *Hutchins* v. *Drainage District,* 217 id.

561; *Joliet* v. *Drainage District,* 222 id. 441; *Stack* v. *People,* 217 id. 220; *Smith* v. *Drainage District,* 229 id. 155.

Commissioners have no power, over objection, to assess benefits, except where no part of the land is taken and the owner claims no damages. *Hull* v. *Drainage District,* 219 Ill. 454.

The spreading of dirt and rock upon land, and the building of bridges, and general inconvenience caused by reason of farms being cut in two by a drainage district, are elements of damages which must be taken into consideration in the spreading of an assessment in drainage work. *Pinkstaff* v. *Ditch District,* 213 Ill. 186.

Commissioners have no jurisdiction to levy an assessment until they have secured, by agreement with the owners or by condemnation, the right of way for the proposed ditches, and assessed damages, by agreement with the owners or by condemnation, for lands not taken but damaged. Laws of 1907, sec. 17, p. 278; *Joliet* v. *Drainage District,* 222 Ill. 441.

An interlocutory order which orders the spreading of an assessment is not conclusive upon any person, and objections may be urged on the filing of an assessment roll, and it is not a final order. *Drainage District* v. *Langellier,* 215 Ill. 271; *Railroad Co.* v. *Drainage District,* 215 id. 501; *Drainage Comrs.* v. *Milligan,* 227 id. 303.

Compensation to be paid the owner for private property must be in money alone, disregarding all benefits to the portion of the land not taken. *Juvinall* v. *Drainage District,* 204 Ill. 106; *Ginn* v. *Drainage District,* 188 id. 305; *McCaleb* v. *Drainage District,* 190 id. 555.

Mr. JUSTICE SCOTT delivered the opinion of the court:

It is impossible to determine from this record which of the many objections made in the county court were deemed by that court to be valid. Only two of the commissioners acted in spreading the assessment. One of the commission-

ers so acting was Jacob Binder. The assessment was extended against approximately 700 acres of land. Of this land Mr. Binder is the owner of 204.13 acres. Madison Phillips is the owner of 120 acres. The assessment has been confirmed as to the lands of these two owners. It was objected, among other things, that each tract of land owned by the objectors was assessed for benefits in a greater amount than its proportionate share of the estimated cost of the work and the expenses of the proceeding and in a greater amount than it would be benefited by the proposed work. It was also objected that Jacob Binder was incompetent to spread the assessment by reason of the fact that he owned a large tract of land in the district which was subject to assessment. The record affords some foundation for the contention made by objectors that the proposed work will very greatly benefit the lands of Binder and Phillips but will be of much less benefit to the lands of each of the objectors than the amount of the assessment extended against such lands.

The objection which attacks Binder's competency to act as one of the commissioners in spreading the assessment of benefits raises a constitutional question. Section 16 of chapter 42, Hurd's Revised Statutes of 1905, provides that in a proceeding such as this the court shall empanel a jury of twelve men. This jury, when empaneled, has the power to assess the benefits. The same section gives the court authority, "as provided by section 37 of this act," to direct that the assessment of benefits shall be made by the commissioners of the district instead of by a jury, and under the last mentioned section the commissioners may make the assessment of benefits if the right of way required "has been released" by the owners of the lands, or when the owners of the lands in the district agree that the commissioners may make the assessment, or "in case the court so orders." We have held in several cases that these provisions are constitutional in so far as they empower the court to direct the

commissioners to make the assessment. (*Hosmer* v. *Hunt Drainage District,* 135 Ill. 51; *Briggs* v. *Union Drainage District,* 140 id. 53; *Trigger* v. *Drainage District,* 193 id. 230.) In none of those cases, however, was the question of the competency of a commissioner to act in assessing benefits where his lands were among those subject to assessment presented. In *Lacey Drainage District* v. *Langellier,* 215 Ill. 271, we held that the land owners could object to the competency of the persons making the assessment upon the application for confirmation.

The present constitution of the State (sec. 2, art. 2,) provides that no person shall be deprived of property without due process of law. Like provisions were found in the constitution of 1818 and that of 1848. The term "due process of law" has been often defined. It is doubtful whether any definition affords a test which will enable the courts to determine, in every instance, whether or not any particular statute is in violation of this provision of the constitution. In *Burdick* v. *People,* 149 Ill. 600, *Frorer* v. *People,* 141 id. 171, *Eden* v. *People,* 161 id. 296, and *Harding* v. *People,* 160 id. 459, we said that the words "due process of law" were synonymous with "law of the land." Due process of law, however, does not mean a proceeding pursuant to any law which the legislature may see fit to pass, whether valid or invalid, but does mean "in the due course of legal proceedings according to those rules and forms which have been established for the protection of private rights." (*Burdick* v. *People, supra.*) Judge Cooley, in his work on Constitutional Limitations, at page 356, uses this language: "Due process of law in each particular case means such an exertion of the powers of government as the settled maxims of law permit and sanction, and under such safeguards for the protection of individual rights as those maxims prescribe for the class of cases to which the one in question belongs."

In determining what rules and forms have been established for the protection of private rights or what safe-

guards for the protection of individual rights the settled maxims of the law prescribe in such cases as this, we recognize the primal necessity to be laws providing impartial tribunals for the adjudication of rights. Section 9 of article 2 of the constitution of 1870 provides that in all criminal cases the accused shall be entitled to a speedy public trial by an impartial jury. The laws of the State have always placed about the jury box, both in civil and criminal cases, the greatest safeguards that the ingenuity of our lawmakers could devise for the purpose of excluding partial, prejudiced, dishonest and interested jurors. Our laws provide for changes of venue, by which the litigant may avoid the necessity of trying his case before a judge or chancellor believed to entertain a prejudice against him. Every constitutional provision that has ever been in effect in this State dealing with the method by which the property of an individual may be forcibly taken away from him, of necessity contemplated the determination of the question of the right to take that property by an impartial judicial body. By section 20 of article 2, *supra,* we are admonished that "a frequent recurrence to the fundamental principles of civil government is absolutely necessary to preserve the blessings of liberty."

While it is true that in a proceeding such as the one at bar the property owner is not entitled to "a trial by jury," within the meaning of that phrase as it is used in the constitution, still it is entirely clear that in providing for a commission to determine the amount of money that shall be collected from each property owner the law of the land forbids the enactment of a statute that permits the selection of a commissioner who personally has a property interest in the result of the deliberations of the body of which he is a member. Self-interest would lead him to seek a low assessment for his own land and assessments correspondingly high for the lands of others. A statute which compels the litigant to submit his controversy to a tribunal of which his

adversary is a member makes his antagonist his judge and does not afford due process of law.

We think the provisions of sections 16 and 37, *supra,* in so far as they appear to confer upon the court the power to direct one of the commissioners of a drainage district to act with the other commissioners in assessing benefits when the lands of the first mentioned commissioner are or may be subject to assessment, are in violation of section 2 of article 2, *supra.* In this view of the matter Binder was not competent to act as a commissioner in spreading the assessment. The objection which we have sustained is one which must be made before the judgment of confirmation is entered. If not so made it is deemed waived and will never thereafter be of any avail. If the assessment has been spread by commissioners who own land in the district and has been confirmed without any objection being filed which raises the question of their competency, the judgment of confirmation is valid and binding, precisely as it would have been had the commissioners owned no land within the district. We have held that in a proceeding under the act concerning local improvements it is error to appoint a person to spread the assessment who has a pecuniary interest in the manner in which the assessment is made. *Murr* v. *City of Naperville,* 210 Ill. 371, and cases there cited.

It is unnecessary to consider other questions arising upon the record.

The judgment of the county court will be affirmed.

*Judgment affirmed.*

Mr. JUSTICE FARMER, dissenting:

I am unable to concur in the view that the provisions of the statute conferring authority upon drainage commissioners who are owners of land in the district subject to assessment, to act in making the assessment of benefits, are in conflict with the constitution and therefore invalid. In *Scott*

v. *People,* 120 Ill. 129, the right of the commissioners to
pass upon the question of the enlargement of the drainage
district was attacked by property owners on the ground that
it would be submitting the question to be determined to an
interested tribunal. The court held this contention unsound,
and said in many instances such a situation was unavoidable.
Property owners in municipalities sitting as jurors in suits
against the municipality, and county and township officers
making up and auditing their own accounts for services to
the public, were cited as instances where an interested per-
son may properly pass upon questions in which he is to some
extent interested. I am not aware of the right of a prop-
erty owner to hold and discharge the duties of the office of
assessor ever having been questioned on the ground that
being a property owner disqualified him.

In *People* v. *Cooper,* 139 Ill. 461, the action of the com-
missioners annexing territory to an already organized dis-
trict was attacked. One of the grounds upon which the
action of the commissioners was claimed to be invalid was,
that they were interested and therefore disqualified to act.
They were residents and land owners in the district. The
court said (p. 496) : "It is not the rule, however, so far
as we are aware, that interest as a land owner or tax-payer
in a municipal or *quasi* municipal corporation disqualifies a
person for holding office in such municipality or for per-
forming any duty incident to such office, although his own
personal or pecuniary interest may to some extent be af-
fected by his action. And this must be especially true in
case of drainage districts, which are organized for the pro-
motion of the private interests of the land owners within
such districts."

*Briggs* v. *Drainage District,* 140 Ill. 53, was an appeal
from a judgment confirming an assessment made by the com-
missioners for extending, continuing, deepening, straight-
ening and widening ditches and for additional work in a
district previously organized. It was contended the com-

missioners had no power to make the assessment,—that it could only be made by a jury. This court held that a complete answer to that position was that the statute authorized the commissioners to make the assessment, and said (p. 56) : "Here the court ordered the assessment to be made by the commissioners of the district, and so far as appears the assessment was made in strict conformity to the statute, and unless the statute is in conflict with some provision of the constitution it must be sustained. No provision of the constitution has been pointed out in the argument which prohibits the legislature from enacting a law authorizing an assessment of this character to be made by commissioners, and we are aware of no such provision."

*Trigger* v. *Drainage District,* 193 Ill. 230, was an appeal by a land owner from the judgment of the county court confirming the assessment made by the commissioners. One of the grounds urged for reversal by the appellant was, that the commissioners who made the assessment heard and determined the objections thereto, and that she was therefore deprived of her constitutional right to a trial by jury. This court said (p. 233) : "We have held that the Drainage law, under which the proceeding was had, especially authorizes the assessment of benefits to be made by the drainage commissioners when the county court so orders or directs, and that that statute is not in conflict with the constitution guaranteeing the right to jury trials." After quoting the paragraph above set out from the *Briggs case* the opinion proceeds: "It is clear from the several sections of the act under which this proceeding was had, that the county court may, in the first instance, order the assessment of benefits to be made either by a jury or by the commissioners, and that whichever body is ordered to make the assessment must hear and determine objections filed to such assessment. (*Mc-Caleb* v. *Coon Run Drainage District,* 190 Ill. 549.) The county court had no power to grant the motion of counsel for the objector to empanel a special jury to hear the issues

formed on the objections. If evils or hardships result from the statute, the remedy is in the legislature and not with the courts."

I am not unmindful that some of the cases referred to arose under the Farm Drainage act, and that in none of them, except *People* v. *Cooper,* does it appear from the opinion that the commissioners were land owners in the district; but if the principles and rules of law announced in those cases are correct, then it appears to me the conclusion reached by the court in this case is erroneous. It is true that allowing commissioners to sit in review upon an assessment made by them, when it is objected to by a property owner, may not be a wise provision, but this objection will not be remedied by depriving commissioners who are land owners in the district of the power to make the assessment. This evil, if it be an evil, will exist in as great a degree if the assessment is made by a jury or by commissioners who own no land in the district, for the body that makes the assessment must hear and determine the objections to it. In my opinion the evils resulting from commissioners owning lands in the district having power to make the assessment are so small and the benefits from it so great, that the statute giving them power to act in that respect should not be declared invalid unless clearly in conflict with the constitution. In the *Briggs case* this court said it knew of no constitutional provision that was violated by an act authorizing the commissioners to make the assessment. While it does not appear from the opinion in that case whether the commissioners owned land in the district, no distinction is made on that account, and no intimation is found in the opinion that the broad assertion that such a statute violated no constitutional provision was intended to be limited or restricted to a certain class of commissioners. It appears to me the rules applicable to the determination of the constitutionality of statutes, and the cases referred to, furnish sufficient authority to justify sustaining the statute confer-

ring power on the commissioners who may also be land owners in the district to make the assessment of benefits. Holding a statute authorizing this to be done is in violation of the constitution, and therefore invalid, is to seriously impair one of the most valuable provisions of the act, and this should not be done unless required by precedent or the rules of construction, and I think neither requires it in this case.