## Ezekiel French, Appellee, v. E. W. Bates et al., Drainage Commissioners Broadwell Special District No. 1, Appellants.

1. DRAINAGE, § 91*—*when evidence sufficient to sustain judgment ordering mandamus to issue against commissioners.* On petition for a peremptory writ of mandamus to compel the drainage commissioners to provide a more sufficient outlet for the drainage of petitioner's land, a judgment ordering the writ to issue *held* sustained by the evidence, it appearing that the commissioners had dispensed with an open ditch and used a fourteen inch tile, which was of insufficient capacity for the water of the district to pass through and in consequence thereof the water stood on the lands of the petitioner until other lands below him were drained.

2. DRAINAGE, § 90*—*duties of commissioners enforceable by mandamus.* The duties of drainage commissioners prescribed by sections 17 and 41 of the Farm Drainage Act (Hurd's R. S. 1911, pp. 905, 911, J. & A. ¶¶ 4493, 4518) are mandatory and may be enforced by mandamus.

3. DRAINAGE, § 87*—*discretion of commissioners to use open ditches or tile drains.* Drainage commissioners have the right in their discretion to use tile for an outlet in place of an open ditch, provided they use tile of sufficient capacity and lay them in such a manner as to accomplish the purpose for which they are used.

4. DRAINAGE, § 90*—*when petition for mandamus to compel commissioners to provide sufficient outlets no interference with discretionary powers.* A petition for a peremptory writ of mandamus to compel drainage commissioners to provide an outlet of ample capacity for the waters of the district does not seek to regulate or control any discretionary powers or duties of the commissioners; the plan or scheme to accomplish the result rests wholly within the discretion of the commissioners, and such discretion will not be interfered with by the courts unless it is manifest that it has been grossly abused.

5. DRAINAGE, § 90*—*sufficiency of demand on drainage commissioners before filing petition for mandamus.* Written demand served by landowner upon drainage commissioners to provide sufficient drainage of his land, *held* sufficient to entitle him to file a petition for a peremptory writ of mandamus to compel commissioners to provide for an adequate drainage of his land.

6. MANDAMUS, § 117*—*when statute of limitations begins to run against right to file petition against drainage commissioners.* The statute of limitations does not begin to run as against the right of a

*See Illinois Notes Digest, Vols. XI to XV, same topic and section number.

landowner to file a petition for a peremptory writ of mandamus to compel the drainage commissioners to construct proper drains until after demand is made.

7. NEW TRIAL, § 73*—*when newly-discovered evidence not grounds for.* After judgment entered ordering a peremptory writ of mandamus to issue against drainage commissioners to compel them to provide more adequate drains for petitioner's property, newly-discovered evidence presented by affidavit on motion for new trial to the effect that at one time when the petitioner was testifying that his land was covered with water, the mouth of the tile was covered with water so as to deprive the ditch of any outlet for a time, *held* insufficient to materially affect the merits of the case.

Appeal from the Circuit Court of Logan county; the Hon. THOMAS M. HARRIS, Judge, presiding. Heard in this court at the October term, 1913. Affirmed. Opinion filed December 27, 1913. *Certiorari* denied by Supreme Court (making opinion final).

HUMPHREY & ANDERSON, for appellants.

KING & MILLER, for appellee.

MR. JUSTICE ELDREDGE delivered the opinion of the court.

Appellee filed a petition in the Circuit Court of Logan county for a peremptory writ of mandamus to compel the Drainage Commissioners of Broadwell Special District No. 1 to provide and execute some plan of altering or enlarging the scheme of drainage of said district as will afford an adequate outlet to properly drain the lands of the petitioner in said district. The cause was tried before a jury upon four questions of fact, which the jury found in favor of the petitioner. The verdict found, (1) that within five years prior to the 9th day of January, 1913 (the date of the filing of the petition), the district had failed to furnish a sufficient outlet for the adequate drainage of the lands of the petitioner located in said district; (2) that such condition still exists; (3) that petitioner had within five years made a demand upon said district to furnish a system with a sufficient outlet; (4) that no sufficient outlet had been furnished by the commissioners. The court entered judgment upon the

*See Illinois Notes Digest, Vols. XI to XV, same topic and section number.

verdict of the jury and ordered a peremptory writ of mandamus to issue against defendants in accordance with the prayer of the petition; from which judgment this appeal is prosecuted by the commissioners.

This drainage district embraces about 2,340 acres of land situated in Broadwell, Elkhart and Mt. Pulaski townships and was organized in 1884. The drainage ditch runs in a southeasterly and northwesterly direction through the district, the outlet being in the northwest corner thereof. It is about four miles in length and under the original system for the first two and one-fourth miles running southeasterly from the outlet an open ditch was constructed five and one-half to six feet deep and six to nine feet wide. From the southeastern terminus of the open ditch for the balance of the distance the system consisted of twelve, ten and eight inch tile. The lands of the petitioner are located in the southeast part of said district and through his lands a ten inch tile was laid.

In 1904 the commissioners decided to dispense with the open ditch, and used in place thereof a fourteen inch tile and filled in the open ditch. The contention of the petitioner is that since the fourteen inch tile was laid in place of the open ditch there has not been a sufficient outlet for the drainage waters of the district and that the waters stand on his lands until the other lands below him are drained, in consequence of which in rainy seasons his lands have remained flooded to such an extent and for such a length of time as to cause him a great deal of loss and damage; that his lands are classified at one hundred, the maximum rate; that he has paid in assessments since the district was organized over two thousand dollars and is entitled to have such an outlet constructed as will provide his lands with adequate drainage. The evidence shows that from the outlet in the northwest corner of the district running for a distance of eight hundred feet in a southeasterly direction a single line of tile fourteen inches in diameter is laid. At this point (eight

hundred feet from the outlet), this single line of tile is connected with two lines of tile running along side by side, parallel with each other, for over a mile through said district. One line of this last mentioned tile consists of fourteen inch tile and the other of twelve inch tile. At the southeastern terminus of this double line of tile is connected a single line of twelve inch tile, which, in turn, is connected with ten inch tile and the latter with eight inch tile. It was found necessary to put in this double line of tile in order to take care of the drainage waters. Thus it will be seen that all the accumulated drainage waters of this district empty into and are finally discharged through the single line of fourteen inch tile. There was much testimony taken by both parties on the trial on the question of fact as to whether there was a sufficient outlet to adequately drain the lands of the petitioner. The jury found adversely to appellants, which finding was approved by the trial court and we think is justified by the evidence. The accompanying plat shows substantially the location of the drains in this district.

Two propositions are advanced by appellants and argued at length: First, that the drainage commissioners are vested with a discretion in determining upon the proper scheme for the drainage system and when that discretion has been exercised courts cannot interfere with or control it. Second, that if the court has a right to entertain a petition for mandamus in a case of this character then it should have submitted a question of fact to the jury to determine just what system of drainage would be proper and necessary.

.Counsel for appellants misapprehend the purpose of the petition and the effect of the judgment. The petition does not seek nor does the judgment attempt to regulate or control any discretionary powers or duties of the commissioners. They only seek to enforce the mandatory duties of the commissioners to provide an outlet of ample capacity for the waters of the district. The plan or scheme to accomplish this result is wholly within the discretion of the commissioners, and this discretion will not be interfered with by the courts unless it is manifest that it has been grossly abused. The commissioners have the right in their discretion to use tile for an outlet in place of an open ditch, provided, that they use tile of sufficient capacity and lay them in such a manner as to accomplish the purpose for which they are used.

Section 17 of the Farm Drainage Act (Hurd's Stat. 1911, p. 905, J. & A. ¶ 4493) provides that the commissioners shall determine upon a system of drainage which shall provide main outlets of ample capacity for the waters of the district, having in view the future contingencies as well as the present, and section 41 of the same Act (J. & A. ¶ 4518) provides that if the commissioners find by reason of error in locating or constructing the ditches, or from any other means, the lands of the district are not drained or protected as contemplated, or some of them receive partial or no benefit, they shall use the corporate funds of the district to carry out the original purposes to the end that all the lands so far as proper shall receive their proper

and equal benefits as contemplated when the lands were classified. The duties prescribed by these sections of the statute are mandatory and may be enforced by mandamus. *Langan v. Milk's Grove Spec. Drain. Dist. No. 1*, 239 Ill. 430; *Peotone & M. Union Drain. Dist. No. 1 v. Adams*, 163 Ill. 428.

It is assigned as error that no sufficient demand was made upon the commissioners. The evidence shows that on the 9th day of May, 1908, the petitioner served the drainage commissioners with a written notice stating in substance that he desired to advise them that by reason of the fact that the main ditch of the district had been filled up and a tile drain placed therein that said tile drain was not of sufficient capacity to carry off the water of said district and that his lands, describing them, were improperly drained; that he had been greatly damaged thereby and that unless immediate steps were taken by them to put in good working order the main ditch of the district or in some manner provide for the complete and proper drainage of his land he would proceed to take such legal steps as he might be advised are proper to accomplish such drainage of the land. This demand was amply sufficient.

It is further contended by appellants that appellee is barred by the statute of limitations and that the rulings of the court thereon were erroneous. It is claimed that the statute began to run from the time that the tile were substituted for the open ditch. The trial court held, and we think properly, that the statute did not begin to run until the demand was made. We held in the case of *Meents v. Reynolds*, 62 Ill. App. 17, in a suit for a peremptory writ of mandamus to compel the drainage commissioners to build a bridge, that the statute of limitations did not commence to run until after a demand for the bridge had been made by the land owners. By analogy the same principle should apply to the case at bar, and we are of the opinion that the court did not err in so holding.

Appellants also assign as error that a new trial should have been granted on the ground of newly-dis-

covered evidence. On the motion for new trial an affidavit was presented showing that at one time when the petitioner testified his land was covered with water, the mouth of the tile was covered with water to a depth of eight feet, thus depriving the ditch of any outlet for a time.

We do not think that this evidence, if introduced, would be of sufficient weight to materially affect the merits of the case.

There being no material error in the record, the judgment of the Circuit Court is affirmed.

*Affirmed.*